1  Joseph P. DiVincenzo, Cal. # 65649  *(pro hac vice application forthcoming)*
   Remer, DiVincenzo and Griffith, PC
2  220 Newport Center Dr. #11-386
3  Newport Beach, CA 92625
4  (949) 759-0781
   j.divincenzo@rdgattorneys.com
5

6  Jessica A. Andrew   Utah # 12433
   Lance Andrew, PC
7  15 West South Temple, Suite 1650
   Salt Lake City, Utah 84101
   Phone: (801) 869-6800
8  Fax: (801) 869-6801
   jandrew@lanceandrewlaw.com
9

10       Attorneys for Plaintiff Braydon Cancellieri

11

12                    **UNITED STATES DISTRICT COURT**
                      **FOR THE DISTRICT OF UTAH**
13

14  BRAYDON CANCELLIERI, an individual,   ]   CASE NO.   2:20-cv-00900-DAO
                                           ]
15                         Plaintiff,       ]   JUDGE
                                           ]   DEPT.
16  vs.                                     ]
                                           ]   **COMPLAINT FOR DAMAGES;**
17  GREATER PARK CITY COMPANY, A            ]   **JURY DEMAND**
    DELAWARE CORPORATION, GREATER           ]
18  PROPERTIES, INC., A DELAWARE            ]
    CORPORATION, PARK CITY MOUNTAIN         ]   Complaint Filed:
19  RESORT, POWDR, INC., PARK               ]   Trial Date:          None Set
    PROPERTIES, INC., POWDR                 ]
20  DEVELOPMENT COMPANY, TALISKER           ]
    LAND HOLDINGS, LLC, A LIMITED           ]
21  LIABILITY COMPANY, TALISKER LAND        ]
    RESOLUTION, LLC, A LIMITED LIABILITY    ]
22  COMPANY, FLERA, LLC, A LIMITED          ]
    LIABILITY COMPANY, TALISKER             ]
23  CANYONS LEASECO, LLC, A LIMITED         ]
    LIABILITY COMPANY, UNITED PARK          ]
24  CITY MINES COMPANY, A                   ]
    CORPORATION, VAIL RESORTS, INC,         ]
25  VAIL RESORTS MANAGEMENT                 ]
    COMPANY, AND VR CPC HOLDINGS,           ]
26  INC., A DELAWARE CORPORATION, AND       ]
    DOES 1 THROUGH 20, INCLUSIVE,           ]
27                                          ]
                           Defendants.      ]
28

COMPLAINT FOR DAMAGES; JURY DEMAND            1

Braydon Cancellieri, alleges as follows:

## THE PARTIES

1. Braydon Cancellieri, born on August 3, 2000, at all times mentioned, resided and continues to reside in the State of California.

2. The following Defendant entities named herein are collectively referred to herein as "PCMR": Greater Park City Company, a Delaware Corporation, Greater Properties, Inc., a Delaware Corporation, Park City Mountain Resort, Powdr, Inc., Park Properties, Inc., Powdr Development Company.

3. The following Defendant entities herein are collectively referred to in this Complaint as "Talisker": Talisker Land Holdings, LLC, a Limited Liability Company, Talisker Land Resolution, LLC, a Limited Liability Company, Flera, LLC, a Limited Liability Company, Talisker Canyons Lease Co., LLC, a Limited Liability Company, United Park City Mines Company, a Corporation.

4. The following Defendant entities herein are collectively referred to herein as "Vail Resorts": Vail Resorts, Inc., Vail Resorts Management Company, a business entity form unknown, and VR CPC Holdings, Inc., a Corporation.

5. The true names and capacities of Defendants fictitiously named herein as Does 1 through 20, inclusive, are unknown to the Plaintiff, but these persons or entities are believed to be responsible for some of the acts, occurrences and wrongful conduct alleged herein, and the damages to the Plaintiff. Plaintiff will amend this Complaint to assert the identities of the Doe Defendants when the same have been ascertained.

## JURISDICTION AND VENUE

6. Plaintiff, Braydon Cancellieri, was a minor at the time of the acts and events described herein, and under both Utah law and California law, any applicable statute of

limitations was tolled until he reached the age of 18, on August 3, 2018.

7. This is a claim arising out of serious personal injuries suffered by Plaintiff in Park City, Utah. The injury producing occurrences, the acts and omissions of the defendants, and substantial medical treatment, took place in Utah, with subsequent treatment and damages in the State of California.

8. Each and all of the Defendants is an entity domiciled in a state other than California, and a diversity of citizenship exists between the Plaintiff and all of the Defendants.

## FACTS COMMON TO ALL CAUSES OF ACTION

9. Talisker is the owner of most of the land in Park City, Utah, upon which the Park City Mountain Ski Resort is built.

10. Since approximately the 1970's, Talisker leased the land to PCMR for the construction, maintenance and operation of a ski resort and a recreational area.

11. In April, 2011, the existing term of the lease between Talisker and PCMR was ending, subject however to the right of PCMR to renew the lease upon the presentation of timely notice and fulfillment of the conditions set forth in the lease. Through neglect, PCMR failed to renew its lease with Talisker in April, 2011, leading to a legal debate, negotiations and lawsuits over rights, entitlement and leasehold.

12. Because of the failure of PCMR to timely renew the lease in April, 2011, Talisker invited offers from other interested parties to enter into a lease agreement for the ski resort property. Among these other parties were Vail Resorts. Vail Resorts was especially interested in the Park City, Utah property because it had already leased the Canyons Resort, and foresaw in the future a configuration where the Canyons Resort and Park City Mountain Resort would be linked together and could generate more than one million skiers and users per season. The strategy of linking together neighboring ski resorts was a plan that had brought Vail Resorts past success, not only in terms of profitability, but in appeal to its shareholders and a resultant increase in the marketplace for its stock. Multiple adjacent resorts also attracted out of state skiers from lucrative markets such as Plaintiff's domicile of California.

13. Thus, between 2011 and 2014, Vail Resorts became very aggressive in pursuing the opportunity with Talisker to obtain the lease of the Park City Mountain property for Vail Resorts, to evict PCMR and to result in an astronomical increase in lease revenues to Talisker of fifty to 100 times more than PCMR had been paying Talisker for the lease of the land.

14. During this period of time between 2011 and 2014, PCMR, for its part, attempted to negotiate with Talisker for a renewal of its lease. However, the competition and promises of riches from Vail Resorts made it difficult for PCMR to be seen as a successful candidate for renewal by Talisker. To attempt to obtain leverage, PCMR threatened to dismantle all of its ski lifts and infrastructure and threatened to refuse cooperation with Talisker or another lessee for the use of adjacent land owned by PCMR at the bottom of the ski resort slopes. Suffice it to say, that the three groups of entities, Talisker, PCMR and Vail Resorts, displayed accelerating greedy behavior by businessmen, and the safe, efficient management and operation of the ski resort took a back seat.

15. However, between April, 2011 and 2014, the Park City Ski Resort somehow continued to be operated under the dysfunctional relationships created by the tug and pull, maneuvering and posturing, litigation and legal wrangling, among the three groups of defendants, Talisker, PCMR and Vail Resorts.

16. Thus, in many respects, the safety of the resort property to skiers, snow boarders and patrons was compromised during this period, as PCMR, in a lame duck status having apparently and legally lost its right to renew its lease, continued to operate with less than a full and necessary commitment to staffing, hiring, training, supervising, inspecting, and the close following of prudent policies and procedures to operate safe ski slopes. Vail Resorts, seeking to undermine PCMR and hasten its financial exploitation of the situation, funded litigation by Talisker against PCMR for eviction and termination of the lease, thereby demotivating the resort's "lame duck" employees. Talisker for its part, failed to prudently act to manage the property that it owned, nor to protect the public, patrons and guests on the property from encountering the increasing risk of injury created by the acrimonious war among the Defendants.

17. All of the negative forces and conditions stated above were in play on the afternoon of February 19, 2013, when 12 year-old Braydon Cancellieri was injured at the Park City Mountain Resort, when, without warning, he encountered a dangerous condition on the premises, consisting of a man-made hazard, that could have been prevented by the owners and operators of the ski resort.

18. During the week encompassing February 19, 2013, Plaintiff, Braydon Cancellieri and his parents, along with his younger sister, were on a family vacation visiting Utah from their home in California. Defendant PCMR advertised its ski resort in California, targeting and attempting to appeal to families, children and skiers of all ages.

19. On February 19, 2013, Braydon, a paid customer, was descending down the Thaynes Canyon ski run on Park City Mountain. At a point on the groomed ski run itself, skiers, and snow boarders like Braydon, were presented with a choice, to go to the left or to the right of a small group of trees. Braydon chose to maneuver to the right on his snow board, negotiated a bump, and was immediately impacted by a taut, rigid cable that was anchored to the ground at one end, and attached to a utility pole at the other end. This rigid cable intersected his left leg, above the knee, and the impact severed his femur.

20. The force of the impact, and the excruciating pain from breaking the largest bone in the human body, immobilized Braydon and threw him to the ground. A few minutes later, an employee of PCMR named Bert, arrived and arranged transportation down the hill for Braydon. However, Bert did not properly secure Braydon in the stretcher or sled into which he was placed and while in route to the bottom of the hill, Braydon was ejected from the sled, causing additional shock, distress and injury.

21. At all relevant times each of the Defendants were the express and/or ostensible agent of each of the other Defendants, and were acting within the scope of said agency.

**FIRST CAUSE OF ACTION - PREMISES LIABILITY**

**AGAINST ALL DEFENDANTS**

22. Plaintiff incorporates each and all of the allegations contained in paragraphs 1 through 21, in this Complaint as though again set forth in full.

23. As of February 19, 2013, each and all of the Defendants owned, leased, operated and maintained, or influenced the ownership, leasehold, operation and maintenance, of the Park City Mountain Resort where Plaintiff was injured.

24. Talisker, as the owner of most of the land, along with PCMR who owned some of the land, had non-delegable duties to maintain the premises in a condition safe for skiers, snow boarders, and other recreational users, including non-delegable duties to inspect, configure, eliminate, warn, guard against and reduce the risk of man-made hazards which could foreseeably cause injury to a recreational user of the mountain.

25. It is believed that PCMR continued to operate a ski resort between April, 2011 and 2014, either by special arrangement with Talisker, by open, notorious use or hostile use, or some other arrangement, the details of which have not been precisely disclosed to the Plaintiff herein. In so doing during this period, PCMR acted as the agent of Talisker in continuing to operate and maintain the resort during the period after the leasehold of PCMR had expired.

26. As a part of the interim arrangement for ownership, leasehold, operation, control and maintenance between 2011, and 2014, and subsequently, Vail Resorts inserted itself into a position, by contract or otherwise, to assume liability for the defects, negligence, and conduct complained of herein, and for the damages and injuries caused to the Plaintiff.

27. On February 19, 2013, the Defendants invited and permitted the 12-year old Plaintiff to purchase a ticket to utilize the lifts, trails and runs, and to otherwise use the Park City Mountain Resort, without restriction.

28. The dangerous hazard created and maintained by the Defendants, the steel cable suspended in mid air between a pole and the ground, was acknowledged by the Defendants as constituting a serious and dangerous risk of injury if contacted by a skier or snow boarder. The errors, omissions and conduct of Defendants created and maintained conditions that forseeably increased the risk and causation of injury to recreational users of the premises, particularly in Plaintiff's age group. Among other things, this acknowledgment and recognition of the hazard caused Defendants to negligently wrap a part of the cable with a thin covering and to affix small flags onto a portion of the cable which could not be readily seen and which provided ineffective,

or no protection or warning, to a moving skier or snow boarder. The layout of the terrain, including a rise in the ground prevented or delayed the observation of the hazard by a recreational user. Moreover, the dark color of the wrap placed on part of the cable blended with the background of trees and reduced the visibility of the cable.

29. The groomed portion of the Thaynes Canyon Run in the area where the hazard existed was, according to PCMR, about 200 feet wide. A trail could have been cut that avoided entry to the area where the hazard existed. Instead, the Defendants permitted skiers, boarders, and other users to enter the area where the cable existed, which was either on the groomed run, or within a few feet of it.

30. Reasonable, daily inspections to evaluate the safety risks of the cable were not performed, and the hazard was the type that was capable of being evaluated upon inspection by properly trained employees and agents of Defendants..

31. The Defendants failed to use adequate devices to call attention to the dangerous cable despite the fact that larger orange flags, warning signs and other warning devices, were available and were posted on other runs on other parts of the mountain.

32. The Defendants failed to utilize orange or high visibility fencing, tape or other barriers to prevent or warn skiers or boarders from entering an area containing the safety hazard, despite the availability of such items to the employees and crews.

33. The Defendants failed to adequately staff, train, supervise, deploy, schedule and utilize personnel to eliminate the hazard, or to prevent contact between recreational users and the cable. In comparison to the potential for serious, life changing injury, the cost and burden of taking adequate safety measures was low.

34. Historically, the Defendants, and each of them, knew of prior claims, injuries, and incidents on these premises or on other resorts owned and operated by them which should have triggered an obligation to prevent the type of encounter between Plaintiff and a decapitating, injurious cable suspended in midair.

35. Plaintiff suffered serious, permanent and disfiguring injury requiring extensive surgeries, and medical treatment. Plaintiff's damages are in excess of the jurisdictional

minimum of this court, and will be shown according to proof.

## SECOND CAUSE OF ACTION - NEGLIGENCE
## AGAINST ALL DEFENDANTS

36. Plaintiff incorporates each and all of the allegations contained in paragraphs 1 through 35, of this Complaint as though again set forth in full.

37. Based upon the allegations set forth above, Defendants, and each of them, were negligent and their negligence proximately caused injuries and damages to the Plaintiff.

38. The type of dangerous condition and defective condition and hazard that caused injury to the Plaintiff was not the type of condition that he expected to encounter, or that skiers and snow boarders generally expect to encounter, or wish to encounter, in utilizing the recreational premises of a ski resort. A taut, steel cable, suspended in mid air that can cause serious, if not fatal injury upon contact at a moderate speed, is not an inherent risk of skiing or snow boarding.

39. The burden upon Defendants to implement inspections, re-routing, warning signs and measures to eliminate the threat of serious injuries from the cable, was minimal both in time and in cost, but Defendants failed to act reasonably.

40. During the period between April, 2011, and 2014, when the Defendants were engaging in legal wrangling, and the resort was being run in the "lame duck" or "dysfunctional" period, the Defendants knew, or should have known, that the necessary personnel, time, money and resources would not be devoted to the operation of the resort. It was a further act of negligence to not take sufficient measures to ensure that the safety of the public and recreational users was provided during this period of time. It was also an act of negligence to fail to secure and transport the injured minor down the mountain, causing him to suffer further injury.

41. As a proximate result of the negligence of the Defendants, and each of them, Plaintiff has been damaged in an amount that will be shown according to proof, but exceeds the minimum jurisdictional limits of this court.

## THIRD CAUSE OF ACTION - CONCEALMENT
## AGAINST ALL DEFENDANTS

42. Plaintiff incorporates each and all of the allegations contained in paragraphs 1 through 41, in this Complaint as though again set forth in full.

43. Defendants, and each of them, were aware of and actively contributed to the conflict, lack of cooperation, threats, litigation and other dysfunction related to the ownership, leasehold, operation, maintenance and safety of the ski resort during the period between April, 2011 and 2014.

44. Defendants, and each of them, knew, or should have forseen, that the strife and dysfunction created by their antics and behavior resulted in less than safe conditions with respect to the daily operation of the ski resort. Defendants knew, or should have forseen, that the risk of injury to unsuspecting and uninformed patrons increased during said time period. As a result of such conditions, including the lack of funding, lack of supervision, negligent hiring, negligent training, lack of inspections, lack of oversight, failure to follow policies, and general poor management, risk of injury to Plaintiff increased.

45. Defendants, and each of them, failed to provide honest and accurate information to patrons and recreational users of the ski resort, and failed to advise them of the increasing risk factors and decreasing attention to safety.

46. Defendants, and each of them, knew or should have known, that recreational users such as Plaintiff, and his family, would believe and assume that the customary level of precaution, management and concern for safety risks would be undertaken by the owners and operators of the ski resort.

47. As a result of the acts of concealment by the Defendants, and each of them, and their failure to disclose, truthfully, the dysfunctional state of management and operations, and the increased risks of injury, Plaintiff suffered injuries and damages, in excess of the jurisdictional minimum of this court, which will be shown according to proof.

48. Additionally, because Defendants were long time owners, operators and managers of ski resorts, each of whom had made many millions of dollars from such ownership and operations, and knew what would normally be required and implemented to assure safe operations and intentionally ignored such requirements, to concentrate on fighting for profit,

with reckless disregard for customer safety, Defendants acted intentionally, fraudulently and maliciously subjecting them to an assessment of punitive damages for their despicable conduct.

49. **DEMAND FOR JURY TRIAL**. Plaintiff hereby demands a trial by jury on all issues so triable under FRCP Rule 38.

WHEREFORE, Plaintiff prays as follows:

1. Judgment in favor of Plaintiff on each Cause of Action, and against the Defendants, and each of them;

2. For an award of compensatory damages in an amount according to proof, but in excess of the jurisdictional minimum of $75,000;

3. For an award of costs, prejudgment and post-judgment interest from the date of injury, or date of filing, or as otherwise authorized by law;

4. For exemplary damages for the intentional concealment, and,

5. For such other and further relief as the court deems proper.

Dated: December 21, 2020

REMER, DiVINCENZO & GRIFFITH
A Professional Corporation

By: _____
JOSEPH P. DiVINCENZO, pro hac vice
Attorneys for Plaintiff Braydon Cancellieri

LANCE ANDREW, P.C.

By: /s/ Jessica Andrew
JESSICA A. ANDREW
Attorneys for Plaintiff Braydon Cancellieri