UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| BRAYDON CANCELLIERI,<br><br>Plaintiff,<br><br>v.<br><br>GREATER PARK CITY COMPANY d/b/a PARK CITY MOUNTAIN RESORT and POWDR CORP.,<br><br>Defendants. | MEMORANDUM DECISION<br>AND ORDER<br>GRANTING DEFENDANTS' MOTION<br>FOR SUMMARY JUDGMENT<br><br>Case No. 2:20-cv-900-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiff Braydon Cancellieri sues Defendants Greater Park City Company and Powdr Corp. for premises liability and negligence, seeking damages for injuries he suffered when he collided with a steel cable while snowboarding at Defendants' ski resort. Defendants move for summary judgment on all of Plaintiff's claims. The court grants Defendants' motion.

I.

Ten years ago, then twelve-year-old Braydon Cancellieri snowboarded down a green run called Thaynes Canyon at Park City Mountain Resort, which was then owned and operated by Defendants. *See* Dkt. No. 48-1, Ex. 109 (Cancellieri Decl.) ¶¶ 5, 7; Dkt. No. 28 ¶ 7. Mr. Cancellieri came to a spot where he could either bear to the left of a group of trees and stay in a wider part of the run or go to the right of the trees over a hill. *See* Cancellieri Decl. ¶ 8; Dkt. No. 48-1, Ex. 106. Mr. Cancellieri chose to go to the right and, almost immediately after going over the hill, he collided with a steel cable and broke his leg. *See* Cancellieri Decl. ¶¶ 8–11. Mr. Cancellieri did not see the steel cable until he went over the hill. *See id.* ¶ 8.

A few minutes later, an off-duty ski patroller approached Mr. Cancellieri to assess his injuries and radioed for assistance. *See id.* ¶ 12. On-duty patrollers eventually arrived and asked Mr. Cancellieri if he could feel pain in his back, move his legs, or feel anything warm around his

legs, and they asked him questions to assess whether he had suffered head trauma. *See* Dkt. No. 50-1, Ex. 1 (Cancellieri Dep.) at 79:25–81:2. The patrollers placed Mr. Cancellieri on a toboggan connected to a snowmobile so that they could tow him down the mountain to an ambulance. *See id.* at 82:14–83:4. Mr. Cancellieri testified that while being towed, his toboggan flipped over and he was dragged over the snow for 20 or 30 feet. *See id.* at 83:2–84:20.

Mr. Cancellieri asserts claims against Defendants for premises liability and negligence based on where and how Defendants maintained the steel cable as well as for their failure to warn skiers and snowboarders of the steel cable. *See* Dkt. No. 30 ¶¶ 25–44. He also asserts a negligence claim for additional injuries he suffered when the toboggan flipped over while he was being towed. *See id.* ¶¶ 20, 43.[1]

## II.

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Tenth Circuit has made clear that summary judgment for the defendant is appropriate if state law requires a plaintiff to provide expert testimony to prevail on a negligence claim and the plaintiff fails to provide such testimony. *See Harvey v. United States*, 685 F.3d 939, 950–51 (10th Cir. 2012).

## III.

In *Callister v. Snowbird Corp.*, the Utah Court of Appeals explained that under Utah law, expert testimony is required in negligence cases "if the standard of care involves issues that do

---

[1] In his first amended complaint, Mr. Cancellieri also asserted a claim based on Defendants' failure to disclose that they were involved in litigation and other business disputes that allegedly affected the maintenance and safety of the ski resort. *See* Dkt. No. 30 ¶¶ 45–51. In his response to Defendants' motion for summary judgment, however, Mr. Cancellieri stated that he was abandoning this claim. *See* Dkt. No. 48 at 18–19.

not fall within the common knowledge and experience of lay jurors." 337 P.3d 1044, 1050 (Utah Ct. App. 2014). It then held that in "negligence cases against ski resorts and related industries with specialized equipment and operations, expert testimony is required because an average person would not have knowledge of standards of care in those industries and thus would be forced to speculate about how a reasonable ski resort operator would act." *Id.* (cleaned up). The court in *Callister* applied the same rule to a premises liability claim, which also requires a showing that the defendant failed to exercise reasonable care. *See id.* at 1047, 1050; *Hale v. Beckstead*, 116 P.3d 263, 266 (Utah 2005) (quoting Restatement (Second) of Torts § 343).

Defendants rely on *Callister* to argue that they are entitled to summary judgment on Mr. Cancellieri's claims because he did not disclose an expert to establish the standard of care and the deadline to do so has passed. *See* Dkt. No. 47 at 7–10. The court agrees.[2]

In *Callister*, the plaintiff was hit by an aerial tram while stopping to take off his ski goggles. *See* 337 P.3d at 1046. The plaintiff sued the ski resort for negligence, premises liability, and other related claims, arguing that it breached its duty of care "by failing to rope off a larger area around [the tram] tower . . . , failing to put up signs warning that the tram passes so low that

---

[2] Defendants argue that they are also entitled to summary judgment on Mr. Cancellieri's negligent towing claim because that claim is subject to the prelitigation requirements imposed by the Utah Health Care Malpractice Act for any "malpractice action against a health care provider," Utah Code § 78B-3-403(18), which Plaintiff undisputedly did not satisfy. This argument appears to be well taken. As the Utah courts have explained, the phrase "health care provider" as used in the Act has an "expansive meaning" that extends to ambulance services provided by "paramedics, whether operated by a hospital or not." *Carter v. Milford Valley Mem'l Hosp.*, 996 P.2d 1076, 1079–80 (Utah Ct. App. 2000). Because ski patrollers provide care similar to such ambulance services, they likely fall within the Act's definition of health care providers. And given that Mr. Cancellieri's claim for negligent towing appears to arise out of the health care provided to him by the patrollers, this claim likely constitutes a "malpractice action against a health care provider." *Scott v. Wingate Wilderness Therapy, LLC*, 493 P.3d 592, 600 (Utah 2021) (cleaned up). Because the court grants summary judgment for Defendants on other grounds, it ultimately need not decide this issue, however.

3

it can hit skiers, and failing to adequately dig out the snow where [he] got hit." *Id.* at 1047. The court held that summary judgment was appropriate because the case involved issues "such as standards regarding aerial trams, the type and size of warning ropes, and the size, content and placement of warning signs" that "are beyond the common experience of lay people" but the plaintiff had failed to provide expert testimony to "establish[] the applicable standard of care" regarding these matters. *Id.* at 1050 (cleaned up).

To the extent Mr. Cancellieri's claims arise out of his collision with the steel cable, they raise many of the same sorts of issues that the court in *Callister* held are outside the common knowledge of lay jurors. These issues include (1) the types and colors of padding, warning flags, signs, fences, tape, or other devices and barriers that should be used to warn and protect skiers against the dangers posed by a steel cable, *see* Dkt. No. 30 ¶¶ 31, 34–35, 42; and (2) the appropriate "layout of the terrain" near a steel cable and whether a run should be cut to avoid it, *id.* ¶¶ 31–32, 42; as well as, more generally, (3) the steps ski resorts should take to "inspect, configure, eliminate, warn, guard against and reduce the risk of man-made hazards," *id.* ¶¶ 27, 33, 42; and (4) the quality and frequency of training and supervision a ski resort should provide to its employees to protect against such hazards, *see id.* ¶ 36.

To the extent Mr. Cancellieri's claims arise out of the towing accident, the court concludes that they also present issues outside the common knowledge and experience of lay jurors, including the equipment ski patrollers should use to transport injured persons from ski slopes, how injured persons should be fastened to toboggans used to transport them from the ski slopes, the routes ski patrollers should take when towing injured persons, how fast patrollers should travel when towing injured persons, and the quality and quantity of training that should be provided to patrollers.

In short, the standard of care in this case can be determined only by examining the specialized equipment and operations of ski resorts, which the Utah courts have held are outside the common knowledge and experience of lay jurors. It follows that the standard of care in this case must be established by expert testimony.

### IV.

Mr. Cancellieri argues in the alternative that even if expert testimony is necessary to establish the standard of care, he can avoid this requirement by invoking the doctrine of *res ipsa loquitur*. *See* Dkt. No. 48 at 17–18. To rely on this doctrine, a plaintiff must establish that "(1) the accident was of a kind which in the ordinary course of events, would not have happened had the defendant(s) used due care, (2) the instrument or thing causing the injury was at the time of the accident under the management and control of the defendant, and (3) the accident happened irrespective of any participation at the time by the plaintiff." *Dalley v. Utah Valley Reg'l Med. Ctr.*, 791 P.2d 193, 196 (Utah 1990) (cleaned up). Mr. Cancellieri does not satisfy all of these elements and thus cannot rely on the doctrine. First, given the inherent dangers of skiing and snowboarding, the court has little difficulty concluding as a matter of law that a snowboarder's collision with a hazard at a ski resort is not the kind of accident that "in the ordinary course of events" would not occur in the absence of a ski resort's negligence. Second, the accident in this case did not happen "irrespective of any participation at the time by the plaintiff." To the contrary, Mr. Cancellieri chose to snowboard over a hill even though he could not see what was on the other side. *See* Cancellieri Decl. ¶ 8. This case thus does not present the sort of "exceptional circumstances" to which the doctrine of *res ipsa loquitur* applies. *Robb v. Anderton*, 863 P.2d 1322, 1327 (Utah Ct. App. 1993).

\* \* \*

For the foregoing reasons, Mr. Cancellieri was required to proffer expert testimony to establish the standard of care. Because he has failed to timely designate any expert to provide such testimony, Defendants' motion for summary judgment is **GRANTED.** [3]

**IT IS SO ORDERED.**

Dated this 30th Day of March, 2023.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge

---

[3] In his response to the motion for summary judgment, Plaintiff requests 20 days to designate an expert if "the Court believes that an expert would be necessary." Dkt. No. 48 at 19. But the deadline set by the scheduling order to disclose experts was May 30, 2022. *See* Dkt. No. 44 at 2. And Plaintiff has not argued—let alone shown—that there is "good cause" for amending the scheduling order as required by Federal Rule of Civil Procedure 16(b)(4).